IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 18, 2008 Session

## JONATHAN BRADFORD DUNN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Bedford County**
**No. 16115   Lee Russell, Judge**

_____

**No. M2007-01322-CCA-R3-CD - Filed October 22, 2008**

_____

Appellant, Jonathan Bradford Dunn, was indicted by the Bedford County Grand Jury for one count of theft of property valued at more than $1,000 but less than $10,000, and one count of filing a false report. After a jury trial, Appellant was convicted on both counts as stated in the indictment. The trial court sentenced Appellant to three years as a Range II multiple offender for theft of property and six years as a Range II multiple offender for filing a false report. The sentences were ordered to run consecutively to each other and to the sentence in Bedford County Case Number 15560. After the denial of a motion for new trial, Appellant initiated the appeal herein, presenting the following issues for our review: (1) whether the evidence was sufficient to support the conviction for filing a false report; and (2) whether the sentence imposed by the trial court was excessive. We determine that the evidence is sufficient to support the conviction and that the trial court properly sentenced Appellant. Consequently, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Christopher P. Westmoreland, Shelbyville, Tennessee, for the appellant Jonathan Bradford Dunn.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Mike McCown, District Attorney General and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On June 13, 2006, a 1999 Jeep Grand Cherokee belonging to Corey Cates was burglarized outside his residence on Rosewood Avenue in Bedford County. Mr. Cates had a number of specialized equipment pieces installed in his vehicle to support his participation in car stereo

competitions. Several items were taken from the vehicle, including a Panasonic TV/DVD "head unit," two amplifiers, two subwoofers, a "custom box" that was designed to house the subwoofers, a radar detector with laser band, and 100 to 200 compact discs. Mr. Cates called the local police upon discovery of the burglary, and they dusted the vehicle for fingerprints.

Police discovered that Brian Andrews, a minor, was responsible for the burglary of the vehicle. He admitted that he sold some of the stolen items to Appellant for the price of $200. Mr. Andrews said that the origination of the items was "not necessarily" discussed with Appellant. According to Mr. Andrews, Appellant acknowledged that he knew Mr. Cates and that he had actually sold some of this equipment to Mr. Cates. Appellant then offered to purchase the equipment and told Mr. Andrews that he was going to hide it in his girlfriend's trunk. The equipment was worth far more than the purchase price. Mr. Andrews was charged with eleven felonies and served nine months in a juvenile facility as a result of the incident.

Detective Brian Crews of the Shelbyville Police Department was assigned to investigate the burglary. He first talked to Appellant at his place of employment on the morning of June 20, 2006. During the initial meeting, Appellant denied purchasing any stolen stereo equipment. Appellant denied knowing Mr. Andrews but admitted that he remembered Mr. Cates. Detective Crews stated that he did not believe Appellant but had no proof to the contrary.

Later that day, Detective Crews received a telephone call from Savannah Cates, the wife of the victim. Mrs. Cates informed Detective Crews that Appellant visited her on June 19, 2006, at her home. According to Mrs. Cates, Appellant claimed that he knew who had stolen the stereo equipment from her husband and that he was going to buy the equipment back for Mr. Cates.[1]

Detective Crews also received a voicemail from Appellant at some point later on that same day. As a result of the telephone call, Detective Crews reinterviewed Appellant and advised Appellant that his previous statement had hindered the investigation into the burglary. At that time, Appellant took Detective Crews to his trailer and to his girlfriend's car, where two 15-inch subwoofers, an SPL amplifier, and the "custom box" were located. One of the speakers and the amplifier were already installed in Appellant's girlfriend's car using the "custom box."

Once the property was seized, Appellant accompanied Detective Crews to the police station where he waived his rights and signed a written statement. The statement reads as follows:

> I, [Appellant] was going down Simms Road and saw Joseph and Brian [Andrews]
> out in the yard. Stopped and was talking to them. Brian asked me if I wanted to buy
> a system. I asked what it was and went and looked at it. I told him I would take it.
> I gave him $200 and left.

---

[1]At trial, Mrs. Cates testified that Appellant visited her again on June 20, 2006, to inform her that he had purchased the stereo equipment in order to return it to her husband "without involving the police." Mrs. Cates notified her husband and the police.

6-20-2006, I, [Appellant], talked to Detective Crews at about 11:00 a.m. about a stolen stereo. And I told him I didn't know nothing [sic]. Then after he left I called Joseph and asked him why he sold me some hot stuff. He said that was his brother's deal. Then I went and seen [sic] Corey, told him I might have his system. And he said, cool, I just want it back. Then I called Crews back and told him I might have it. Then he came and picked me up and we went and got it.

At trial, Appellant took the stand in his own defense. Appellant admitted that he knew Mr. Andrews through his brother Joseph Andrews. According to Appellant, Mr. Andrews offered to sell him some stereo equipment. Appellant asked for a description of the equipment. He recognized it as the system he had previously owned and sold. Appellant knew that Mr. Cates had eventually purchased this system.

Appellant remembered talking to Detective Crews on the morning of June 20, 2006. At that time, Appellant had information that he could have passed on to the detective, but he did not divulge the information so that he would not get into trouble. Appellant talked to his boss, James Farrar, who encouraged him to tell the police the truth. At that point, Appellant called Detective Crews to inform him that he knew where the equipment was located. Appellant claimed that he did not know the equipment was stolen until he talked to the detective. Further, Appellant denied talking to Mr. Cates or his wife.

At the conclusion of the trial, the jury convicted Appellant of both theft of property and filing a false report. The trial court later held a sentencing hearing. At the hearing, Appellant acknowledged his criminal history as stated in the presentence report and admitted that he had committed two prior probation violations. Further, at the time of the offenses herein, Appellant was on bond pending the resolution of another unrelated appeal. At the conclusion of the sentencing hearing, the trial court sentenced Appellant as a Range II multiple offender to three years for theft of property and six years for filing a false report. The trial court ordered the sentences to run consecutively to each other and to the sentence in case number 15560.

*Analysis*

*Sufficiency of the Evidence*

On appeal, Appellant contends that "there was no proof presented by the [S]tate that [Appellant's] denial [to share information with Detective Crews] interfered with the apprehension of another person suspected of committing an offense." In other words, Appellant contends that the evidence was insufficient to support the conviction for filing a false report. The State argues that the evidence clearly shows that Appellant "provided [a] false statement to law enforcement to hinder an investigation" when Appellant lied about his knowledge of the theft, knowingly used the stolen equipment in his girlfriend's car, and "attempted to prevent the discovery of the remaining stolen property."

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the "State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996).

It is a Class D felony to:

(2) Make a report or statement in response to a legitimate inquiry by a law enforcement officer concerning a material fact about an offense or incident within the officer's concern, knowing that the report or statement is false and with the intent to obstruct or hinder the officer from:
      (A) Preventing the offense or incident from occurring or continuing to occur; or
      (B) Apprehending or locating another person suspected of committing an offense; . . . .

T.C.A. § 39-16-502(a)(2).

The proof offered at trial shows that Appellant purchased the stereo equipment prior to his initial meeting with Detective Crews. During the initial interview, Appellant denied that he even knew Mr. Andrews. After the interview, Appellant called Mrs. Cates to inform her that he could get the victim's equipment back without involving the police. Appellant also contacted Mr. Andrews's brother to warn him that the police were coming. Appellant admitted at trial that he did not give Detective Crews all of the information he possessed about the stolen equipment during the first interview. We determine that the evidence was sufficient to support a finding that Appellant made "a report or statement in response to a legitimate inquiry by a law enforcement officer concerning a material fact about an offense or incident within the officer's concern, knowing that the report or

-4-

statement is false and with the intent to obstruct or hinder the officer from . . . (B) Apprehending or locating another person suspected of committing an offense." *Id.*

*Sentencing*

Next, Appellant complains that his sentence is excessive. The State disagrees.

At the outset, we acknowledge that Appellant's entire argument on this issue consists of the following statement, "[b]ased on the testimony at trial and the Sentencing hearing, the sentence imposed is excessive because it is greater than that deserved for the offense committed and great inequalities unrelated to a purpose of this chapter should be avoided." Ordinarily, this issue would be waived. *See* Tenn. Ct. Crim. App. R. 10(b) (stating "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court"). Despite these deficiencies, we will address Appellant's issue on the merits.

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the presentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. T.C.A. §§ 40-35-103(5), -210(b); *Ashby*, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169. In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).[2]

---

[2]In response to *Blakely v. Washington*, 542 U.S. 296 (2004), the Tennessee Legislature amended Tennessee Code Annotated section 40-35-210. *Compare* T.C.A. § 40-35-210(c) (2003) *with* T.C.A. § 40-35-210(c) (2006). The amendment became effective on June 7, 2005. The legislature also provided that this amendment would apply to defendant who committed a criminal offense on or after June 7, 2005. 2005 Tenn. Pub. Act ch. 353, § 18. Appellant herein committed the offenses in June of 2006. Therefore, the amendment to Tennessee Code Annotated section 40-35-210 applies to Appellant. Specifically, the amendment made the sentencing guidelines "advisory" in nature. T.C.A. 40-35-210(c).

We conclude that the record supports the trial court's sentencing determinations. Appellant was convicted of a filing a false report, a Class D felony and theft of property, a Class E felony. Appellant was classified as a Range II multiple offender for sentencing purposes. The sentencing range for a multiple offender convicted of a Class D felony is four to eight years. T.C.A. § 40-35-112(b)(4). The sentencing range for a multiple offender convicted of a Class E felony is two to four years. T.C.A. § 40-35-112(b)(5). The presentence report shows that Appellant has a criminal history starting at age fourteen. At the time of sentencing, Appellant was twenty years old and had prior convictions for public intoxication, violation of "Driver's License Law," a traffic offense, aggravated assault, reckless endangerment with a deadly weapon, two convictions for assault, two convictions for theft of property valued at up to $500, and disorderly conduct. He admitted at the sentencing hearing that he had violated probation at least two times and was out on bond when he committed the offenses herein. Despite the extensive criminal record, the trial court chose not to consider, for enhancement purposes, Appellant's convictions for aggravated assault and reckless endangerment because they were used to determine Appellant's range. The trial court applied enhancement factor (1), that Appellant had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range. T.C.A. § 40-35-114(1). The trial court also applied enhancement factor (8), before trial or sentencing, the defendant failed to comply with the conditions of a sentence involving release into the community. T.C.A. § 40-35-114(8). As stated previously, Appellant admitted at the sentencing hearing that he had violated probation in the past. The trial court also applied factor (13) because Appellant was on bond at the time of the commission of the offenses. T.C.A. § 40-35-114(13). In mitigation, the trial court considered the fact that Appellant's actions neither caused nor threatened serious bodily harm. T.C.A. § 40-35-113(1). The trial court also determined that Appellant reluctantly assisted law enforcement personnel but gave this assistance little weight in mitigation of Appellant's sentence. T.C.A. § 40-35-113(9). The trial court also determined that factor (10), "[t]he defendant assisted the authorities in locating or recovering any property . . . involved in the crime" applied, but gave it little weight. After sentencing Appellant to the middle of the range for each offense, three years for theft of property and six years for filing a false report, the trial court found that consecutive sentencing was appropriate on the basis that Appellant is "an offender whose record of criminal activity is extensive," and Appellant was sentenced "for an offense committed while on probation. T.C.A. § 40-35-115(b)(2) & (6). After a review of the record, we determine that the trial court complied with statutory sentencing procedures and appropriately sentenced Appellant. Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

-6-